**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

RAJ ENTERPRISES OF CENTRAL
FLORIDA LLC,

    Plaintiff,

v.                                                  Case No: 5:14-cv-344-Oc-30PRL

SELECT LABORATORY PARTNERS
INC

    Defendant.

## ORDER

This case alleging breach of a clinical laboratory management contract is before the Court for consideration of Defendant's Motion for an Order Compelling Disclosure or Discovery (Doc. 31), to which Plaintiff has responded. (Doc. 32). Subject to the parties submitting a joint proposed protective order addressing Plaintiff's confidentially concerns regarding alleged trade secrets, Defendant's motion to compel is due to be granted.

**I.  BACKGROUND**

Plaintiff, RAJ Enterprises of Central Florida, LLC d/b/a Pinnacle Laboratory Services ("Pinnacle"), the owner of a clinical laboratory, has brought suit for breach of contract against Defendant, Select Laboratory Partners ("SLP"), a management services company specializing in clinical laboratories. In brief, Plaintiff alleges that Defendant's mismanagement and failure to obtain the necessary licenses for its laboratory resulted in Plaintiff's loss of revenue for approximately four months. (Amended Complaint, Doc. 6). Meanwhile, Defendant has brought a counterclaim for breach of contract seeking damages for past due amounts for services provided

and goods sold under the contract, and for lost revenues due to Plaintiff's alleged wrongful termination of the contract. Defendant alleges that its damages include loss of revenue and profit as a result of Plaintiff's breach of the contract. (Doc. 31, p. 2). Defendant contends that "at the core" of its defense is the number and quantity of urine and oral fluid patient samples tested and billed by Plaintiff from the inception of the contract through the trial in this case. (Doc. 31, p. 2). Indeed, the contract attached to Plaintiff's Amended Complaint sets forth the "Management Schedule Compensation and Plan," including the provision that Defendant shall receive "$1.50 per drug urine and $1.90 per drug oral fluid, per patient tested using a chemistry analyzer." (Doc. 6-1).

In discovery, Defendant propounded discovery requests to Plaintiff, including interrogatories, requests to produce, and deposition notices, seeking information relating to the amount, number or volume of patient samples tested and billed by Plaintiff. Defendant contends the information was sought in order to both defend the claims brought against it and to evaluate and prove its own damages in its counterclaim. (Doc. 31, p. 2). For example, Defendant served the following interrogatory request:

> Please state, for each month since March 1, 2013 through the present, the total number of drug screening tests (tests using a chemistry analyzer), reported and billed by PINNACLE. For each month's total, state the number of tests for oral fluid tests and the number of urine tests.

(Interrogatory No. 6, Doc. 31, p. 3).

In response, Plaintiff provided the requested information for the time period from March 2013 through April 2014, but objected "as to any data subsequent to the termination of the parties' Contract," contending that the information is a "trade secret," and therefore privileged, pursuant to Fla. Stat. § 688.002(4). Indeed, Plaintiff made the same objection as to Interrogatory No. 8

requesting the total number of drug confirmation tests reported and billed by Plaintiff, Interrogatory No. 11 requesting the total dollar amount Plaintiff's gross revenues from patient drug screening and patient drug confirmations for each of the years 2013 and 2014, and Interrogatory No. 12 requesting the total dollar amount that Plaintiff was billed for lab best kits for drug screening procedures since March 1, 2013 through the present. Plaintiff also made this same objection as to similar document requests in a Notice of Deposition Duces Tecum requesting documents be produced by Jim Porter, Plaintiff's principle and corporate representative.

Defendant argues that it has been established in discovery that the requested information is available in documents, records, and other evidentiary materials that are routinely maintained and kept, and can be produced without any undue burden or expenses. (Doc. 31, p. 5). For example, Defendant argues that Jerondio Encienzo, the laboratory supervisor, testified that a daily total of screening and confirmation tests are recorded on his business calendar for each day and it is easy to obtain. (Deposition of Jerondio Encienzo, Ex. A to Doc. 31, pp. 118-120 of deposition transcript). Another employee, Robert Wyka, the laboratory director, testified that the information is routinely obtained from the computerized lab information system and is provided to Pinnacle's owners and management on at least a monthly basis. (Deposition of Robert Wyka, Ex. B to Doc. 31, pp. 41-42).

In its response, Plaintiff does not dispute that the requested information can be compiled. Rather, Plaintiff suggests it will be "excessively time-consuming and burdensome," but fails to cite any evidence that contradicts the deposition testimony of its own employees. Plaintiff contends that, other than the periods of time that SLP managed Pinnacle's lab pursuant to the contract, the data was confidential trade secret, and SLP only had access to the information due to the parties' agreement. Plaintiff contends that, once the contract between the parties ended, the

parties became competitors, and that it is entitled to maintain the confidentiality of its trade secret in litigation against its competitor.

## II.     DISCUSSION

Plaintiff contends that the requested information regarding the amount, number or volume of patient samples tested and billed by Pinnacle, and the associated revenue, is privileged, and therefore not subject to discovery as a "trade secret" under Fla. Stat. § 688.002(4). Fla. Stat. § 688.002(4) defines a trade secret as follows:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Meanwhile, Fla. Stat. § 90.506 provides:

> A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud and or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interest of the holder of the privilege, the interest of the parties, and the furtherance of justice require.

Here, Plaintiff maintains that the information sought consists of "confidential business metrics," and that health care providers are entitled to protect their trade secrets from unauthorized disclosure, citing *Premier Lab Supply, Inc. v. Chemplex Industries, Inc.*, 10 So. 3d 202, 205 (Fla. 4th DCA 2009) (holding that film spooling machine and its design were trade secrets) and *U.S. ex Rel. Daugherty v. Bostwock Laboratories*, Case No. 1:08-cv-354, 2013 WL 3270355, 4 (S.D. Ohio 2013) (summarizing testimony that the clinical laboratory industry is highly competitive, and that pricing information is not disclosed to competitors). Plaintiff also contends that a health care provider's volume is trade secret, citing *Gulf Coast Surgery Center, Inc. v. Fisher*, 107 So.3d 493, 495-96 (Fla. 2d DCA 2013) (holding that the trial court erred in failing to perform a balancing test

or conduct an in camera review to determine if the requested documents relating to financial documents from healthcare provider constituted trade secrets).

"When a party asserts the need for protection against disclosure of a trade secret, the court must first determine whether, in fact, the disputed information is a trade secret [which] usually requires the court to conduct an in camera review." *Summitbridge Nat'l Invs. v. 1221 Palm Harbor, L.L.C.*, 67 So.3d 448, 449 (Fla. 2d DCA 2011) (*citing Ameritrust Ins. v. O'Donnell Landscapes*, 899 So.2d 1205, 1207 (Fla. 2d DCA 2005). Florida courts have held that, in the health care industry, internal cost structure information can constitute a trade secret. *See Laser Spine Inst. v. Makanast,* 69 So.3d 1045, 1046 (Fla. 2d DCA 2011) (referring to documents pertaining to health care billing and collection practices); *Summitbridge Nat'l Invs.*, 67 So.3d at 450 (referring to information pertaining to how different types of patients are charged).

As other courts in this district have observed, the trade secret privilege is "not absolute under Florida law and the court may order production if the balance tips in favor of promoting the interest of facilitating the trial and doing justice as opposed to the interests of the claimant in maintaining secrecy." *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 203 (M.D. Fla. 1990) (holding that the Florida trade secret privilege did not protect claims manuals from discovery, but that plaintiff had shown good cause to warrant the issuance of a protective order addressing confidentiality). As Florida courts have stated, "the party seeking discovery of confidential information must make a showing of necessity which outweighs the countervailing interest in maintaining the confidentiality of such information." *Higgs v. Kampgrounds of Am.*, 526 So.2d 980, 981 (Fla. 3d DCA 1988).

Here, Defendant argues the information sought is "simply a business statistic with no independent economic value that should be cloaked in secrecy." (Doc. 31, p. 7). Yet, based on

the requested information, a competitor could ascertain figures such as pricing for particular tests, and the lab's volume at given times. In consideration of the above cited cases, this pricing and volume information could constitute a trade secret in the health care industry if it provided a competitive advantage. Indeed, Plaintiff alleges that the parties are now competitors. Thus, conceivably, the information sought by Defendant could constitute a trade secret under Fla. Stat. § 688.002(4).

Assuming that the information sought is a trade secret, Defendant has demonstrated it is necessary for its defense, as well as the damages elements of its counterclaim. Moreover, as Defendant correctly observes, Plaintiff may not use the claim of privilege as both a "sword and a shield." Here, Plaintiff has made a partial disclosure of the information to benefit its own claim for damages, but then claims the trade secret privilege as to the information necessary for Defendant's defense and counterclaim. In Florida, "a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege." *Home Ins. Co. v. Advance Machine Co.*, 443 So.2d 165, 168 (Fla. 1st DCA 1983).

Nonetheless, the undersigned concludes that Plaintiff has shown good cause that the information is sufficiently sensitive to warrant the issuance of a protective order under Fed. R. Civ. P. 26(c)(1)(G). Thus, the requested information (specifically, the amount, number of volume of patient samples tested and billed by Pinnacle) is discoverable subject to the entry of a protective order limiting disclosure of the documents. *See Auto Owners Ins. Co.*, 135 F.R.D. at 204. Finally, the undersigned agrees with Defendant that an *in camera* inspection of the information

requested would not provide any significant insights, and any concerns about the sensitivity of the information should be resolved by a joint proposed protective order, as explained below.

### III.   CONCLUSION

Accordingly, upon due consideration, it is ordered that:

(1) The parties shall confer, and **within 20 days of the date of this Order**, file a joint proposed protective order addressing the confidentiality concerns raised by Plaintiff.

(2) Subject to the Court's entry of the proposed protective order, Defendant's motion to compel (Doc. 31) is **GRANTED** as to Interrogatories numbered 6, 8, 11, 12, and 13, and as to SLP's Notice of Deposition Duces Tecum contained in Paragraphs 1, 2 and 3 of the notice.  Plaintiff shall serve all relevant discovery responses and document productions within 7 days of the entry of the protective order.

(3) Defendant's apparent broad request to conduct additional discovery past the July 1, 2015 discovery cutoff date is **DENIED** without prejudice, subject to the right of either party to file a motion seeking leave to conduct additional discovery for a specifically defined purpose.

(4) And, upon a finding that Plaintiff's non-disclosure and objections on the grounds of trade secret privilege were substantially justified, Defendant's request for attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5)(A), is **DENIED**.

(5) **DONE** and **ORDERED** in Ocala, Florida on July 29, 2015.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

- 8 -

Counsel of Record
Unrepresented Parties